UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

MARION DALE JONES #94795                    CIVIL ACTION NO. 19-cv-1548

VERSUS                                       JUDGE S. MAURICE HICKS, JR.

DARREL VANNOY                                MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

A Bossier Parish jury convicted Marion Dale Jones ("Petitioner") of aggravated rape, and he received a mandatory life sentence. His conviction was affirmed on appeal. State v. Jones, 188 So.3d 268 (La. App. 2d Cir. 2016), writ denied, 220 So.3d 742 (La. 2017). Petitioner also pursued a post-conviction application in state court, and all claims were denied. He now presents a federal habeas corpus petition that asks for relief on several grounds. For the reasons that follow, it is recommended that the petition be denied.

**Relevant Facts**

R.W., age 11, was asleep on the couch in her mother's house when she awoke to find a man on top of her. The man pulled her shirt up and licked her breast, then pulled her shorts and underwear down and licked her vagina area. R.W., who was 18 by the time of trial, testified that she asked the man who he was, and he said, "You know me, your momma know me too." R.W. got away and ran to her older sister's room. The man peeked in the room and asked her why she would not come back, but R.W. did not answer. The man left the house.

At the time of the incident, R.W. and her sister, Y.W., were alone in the house with two younger cousins.  Their mother had gone to a friend's house.  The girls called the police and their grandmother, who lived several houses down the street.

R.W. and Y.W. identified Terrence Lattin, their neighbor who lived across the street, as the suspect.  The girls told police that the suspect was a black male who was wearing a red hat and a white t-shirt.  Police spoke to Lattin, who said he had been in his house the entire evening.  Police searched his home and found a white t-shirt between a wall and the bed, and a red hat was found in another room on top of a trash bag.  A detective drove Lattin to the victim's house in the back of her patrol unit, and both R.W. and Y.W. identified Lattin as the suspect.  Lattin was arrested and held in jail for about three months, but he was released after DNA testing of saliva from the victim excluded Lattin as the perpetrator.

Lattin told police and testified at trial that, on the evening of the crime, he was home with his girlfriend when a man wearing a red hat and white t-shirt, driving a white SUV, knocked on his door and asked for a woman whose name started with a D.  Lattin told the man that the woman did not live there, and the man left.  A few minutes later, he saw police lights, opened the door, and found himself arrested for aggravated rape.  Lattin testified that he had been to the victim's house earlier that day, and he smoked marijuana with her mother, but he said it was his first time in the house and he was not even aware that young girls lived there.

Petitioner lived a few blocks down the street from R.W., and he drove a white SUV. The DNA candidate sample was placed in the Combined DNA Index System ("CODIS"),

and it returned as a match for Petitioner.  Petitioner submitted to DNA testing in an interview.  He said he did not know why his DNA was found on the victim.  Sgt. James Stewart, who participated in the interview, testified that Petitioner said, "I'm not denying it; I'm not saying I didn't do it; I'm just not going to talk about that."  Petitioner opted not to give a recorded statement.

R.W. admitted that she identified Lattin as the attacker on the night of the incident, but she said she didn't get a clear look at him because it was dark in the house.  R.W. said that Lattin had been at her house earlier that day with her mother.  Y.W. gave similar testimony about the mistaken identification of Lattin.

DNA analyst Lauren Arihood, a former employee of the North Louisiana Crime Lab, was not available to testify at trial because she had moved to Washington D.C. to work for the FBI.  A transcript of her testimony from a prior hearing was read by Michelle Vrana, the DNA supervisor for the crime lab.  Arihood testified about her testing that implicated Petitioner as the perpetrator of the crime.  Her crime lab report was admitted into evidence.  The jury returned a verdict of guilty.

**Indictment Issues**

Petitioner argued throughout his state court proceedings that the record did not adequately reflect that his indictment was returned in open court as required by a state statute.  The state court held a hearing to explore the grand jury proceedings and ordered that the minutes be supplemented to reflect that the grand jury was empaneled and returned a proper indictment.  Petitioner argued on direct appeal that his motion to quash the indictment should have been granted.  The state appellate court thoroughly explored the

evidence and arguments and concluded that the record revealed "that the bill of indictment was in proper form" and signed by the foreman.  That, together with other evidence, resulted in a finding "that the defendant failed to meet his burden of proving that the bill of indictment was not returned by the grand jury in open court." State v. Jones, 188 So.3d at 275-77.  Petitioner argues in his habeas petition that the absence of a minute entry indicating that a grand jury convened and returned an indictment against him is fatal to the proceedings.

Petitioner's arguments on this issue are based entirely on whether the grand jury proceedings complied with state law.  The habeas statute provides that a federal court may issue a writ of habeas corpus to a state prisoner only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a). The Supreme Court has "stated many times that federal habeas corpus relief does not lie for errors of state law." Swarthout v. Cooke, 131 S.Ct. 859, 861 (2011).  Thus, habeas relief is not available even if Petitioner is correct on his state law arguments.

Furthermore, the sufficiency of a state indictment or bill of information is not a matter for federal habeas corpus relief unless it can be shown that the charging instrument "is so defective that the convicting court had no jurisdiction." Morlett v. Lynaugh, 851 F.2d 1521, 1523 (5th Cir. 1988).  State law is the reference for determining sufficiency and if the issue "is presented to the highest state court of appeals, then consideration of the question is foreclosed in federal habeas corpus proceedings." Morlett, supra.  See also Wood v. Quarterman, 503 F.3d 408, 412 (5th Cir. 2007); McKay v. Collins, 12 F.3d 66, 68-69 (5th Cir. 1994).  And "[a]n issue may be squarely presented to and decided by the

state's highest court when the petitioner presents the argument in his application for postconviction relief and the state's highest court denies that application without written order."  Evans v. Cain, 577 F.3d 620, 624 (5th Cir. 2009).  The arguments about the charging instrument in this case were presented to the state's highest court (Tr. 1229, 1238-39), so there is no basis for habeas relief with respect to this issue.

**Denial of Motion for Mistrial**

The defense obtained a pretrial ruling that prohibited any reference to CODIS, which could prejudice the defendant by suggesting he had a criminal history.  The testimony of DNA expert Lauren Arihood described entering sample information into CODIS, and a crime lab DNA report was published to the jury in connection with her testimony.  Defense counsel moved for a mistrial on the grounds that the suggestion of other crimes prejudiced the defense.  The prosecutor responded that the report said that data was entered into the CODIS system, but it did not specifically say that Petitioner was in CODIS.  Defense counsel responded that the implication of such was made.  Tr. 655-58.

The trial judge noted that the only potentially applicable grounds for mistrial under state law were a legal defect in the proceedings that would make any judgment entered on the verdict reversible as a matter of law, or if it was a physical impossibility to proceed with the trial in conformity with law.  The judge found neither was applicable and denied the motion for mistrial.  He said that he made the pretrial ruling to make sure there was no improper reference to other crimes, but "I doubt any of these people up here, unless they had went to, you know, BPCC in criminal justice, have any idea what CODIS is to begin

with."   He found no prejudice in the context of what happened and denied the motion for mistrial.  Tr. 658-60.

Petitioner renewed this claim on direct appeal.  The state appellate court reviewed the record and Louisiana law regarding the inadmissibility of other crimes evidence, which is reviewed for harmless error.  State law requires that the remark must unmistakably point to evidence of another crime, and ambiguous or obscure references do not prejudice the defense.  The court found that "the defendant failed to show that he was substantially prejudiced by the obscure reference to CODIS in the crime lab report, or that such reference made it impossible for him to receive a fair trial."  State v. Jones, 188 So.3d at 277-78.

Federal courts do not grant habeas relief based on mere errors in the application of state evidentiary rules or even consider it relevant whether state evidentiary rules were satisfied.  Only federal constitutional errors that satisfy the demanding standards of 28 U.S.C. § 2254 merit habeas relief.  The Due Process Clause provides a mechanism for relief when a state court wrongfully admits evidence, but only if the evidence is so unduly prejudicial that it renders the trial fundamentally unfair.  Bigby v. Cockrell, 340 F.3d 259, 271-72 (5th Cir. 2003), citing Dawson v. Delaware, 112 S.Ct. 1093 (1992) and Estelle v. McGuire, 112 S.Ct. 475 (1991).  The evidence must have had a substantial and injurious effect or influence in determining the jury's verdict.  Wood v. Quarterman, 503 F.3d 408, 414 (5th Cir. 2007).

The state court fairly determined that there was minimal basis for any potential prejudice stemming from the references to CODIS in the expert's testimony or the crime lab report.  The denial of the motion for mistrial was entirely reasonable.  There is certainly

no basis to find that the mere implication that Petitioner might have been convicted of some unspecified other crime was so prejudicial that it rendered the trial fundamentally unfair. No relief is permitted on this claim.

**Right to Confrontation**

### A. State Court Proceedings

Petitioner argues that his rights under the Confrontation Clause were violated when DNA analyst Lauren Arihood's testimony was presented by having fellow analyst Michelle Vrana read testimony that Arihood gave at an earlier hearing at which she was subject to cross-examination by defense counsel. The situation arose when the State filed a notice of intent to present Arihood's testimony by simultaneous broadcast because she lived outside the state. Defense counsel objected and requested Arihood's physical presence at trial.

But defense counsel soon filed a motion for continuance of the August 12, 2013 trial date. The State filed an objection (Tr. 271-73) that argued defense counsel had adequate time to prepare and had spent several hours at the crime lab reviewing the case file with Ms. Vrana. The State represented that it had subpoenaed all of its witnesses to appear on August 12, and all of the witnesses were available on that date, but Ms. Arihood would be unavailable to testify after August 12 "due to her upcoming move to Korea." The State asked that if the court granted the continuance it allow a preliminary examination for the purpose of perpetuating Ms. Arihood's testimony. At the time, Ms. Arihood was no longer employed by the local crime lab, lived in Washington, D.C., and was expected to soon leave the FBI and move to Korea with her husband for his military deployment. Ms.

Arihood's plans were generally corroborated by an email she sent from her FBI email address.  Tr. 276.

The court granted the continuance requested by the defense, as well as the prosecution's alternative request for a hearing to perpetuate Ms. Arihood's testimony.  Tr. 277.  That hearing was held, Ms. Arihood testified by Skype, and defense counsel was able to cross-examine her at length.  That testimony, with a prior explanation by the judge, was read to the jury by Ms. Vrana.  Tr. 622-60.  Defense counsel was also allowed to question Ms. Vrana live at trial.  Tr. 661-66.  Defense counsel nonetheless objected to not having Ms. Arihood present in person at the trial.

Defense counsel admitted that he did not issue a subpoena for her, saying he lacked an address and was told she would be out of the country or the state.  The court called on the prosecutor to state the reason that Ms. Arihood was unavailable at the time of trial in October 2014.  The prosecutor responded:

> She is not available.  She left the -- she left this area, was – was residing in Washington, D.C., at the time and then for the longest time our only knowledge of where she was, was that she had relocated to Korea.  We received a facsimile from her indicating that she is back in the United States and that she is not -- that she's not available to testify -- to return to testify.  So, it's that she is outside of the State.  She's outside of the subpoena powers of the Court.  I don't even have an – an address for her.  All I have is – is an email address for her.  But she's nonetheless not -- not available to testify.

The trial judge said, "I find under those facts that Ms. Arihood is in fact unavailable."  Tr. 602-05.

On appeal, Petitioner filed a pro se brief and argued that allowing Ms. Vrana to testify violated his rights under the Confrontation Clause because he did not have the

opportunity to cross-examine the witness who prepared the DNA report.  The focus of his argument was on the alleged lack of cross-examination, but he made a one-sentence vague assertion that: "The trial judge overlooked the facts that the Assistant District Attorney Mr. Pittard stated Ms. Arihood was nonetheless not—unavailable to testify."  Tr. 1026-30.

The state appellate court reviewed the facts and found that Arihood did testify in the case via her prior testimony that was read by Ms. Vrana as allowed by state law.  The court found no confrontation right violation because, when Arihood testified, she was thoroughly cross-examined by defense counsel "and at the time of trial, she was unavailable to testify." State v. Jones, 188 So.3d at 279-80.

Petitioner's writ application to the Supreme Court of Louisiana changed the focus of his argument.  For the first time, he concentrated on the unavailability element and argued that the appellate court "completely disregarded the fact that the State failed to meets (sic) its burden of proving that Arihood was 'unavailable.'"  Tr. 1235.  Petitioner argued that the State did not even use the means of communication it had with her, whether email or fax, to ask for her address so that she might be subpoenaed.  Tr. 1235-37.  The Louisiana Supreme Court denied writs without comment.

**B. Confrontation Clause and an Unavailable Witness**

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right … to be confronted with the witnesses against him … ."  This clause prohibits the admission of testimonial statements of a witness who did not appear at trial unless the witness was unavailable to testify, and the defendant had a prior opportunity for cross-examination.  Crawford v. Washington, 124 S.Ct. 1354 (2004).  The reading of the

DNA expert's testimony at trial constituted the admission of a testimonial statement, and the defense was able to cross-examine the witness when she gave her original testimony. Thus, a Confrontation Clause claim turns on whether the witness was "unavailable" for trial. U.S. v. Gaspar-Felipe, 4 F.4th 330, 337 (5th Cir. 2021).

A witness is unavailable for Confrontation Clause purposes if the prosecution has made a good faith effort to obtain her presence at trial. Ohio v. Roberts, 100 S.Ct. 2531 (1980). Roberts stated that the lengths to which the prosecution must go to produce a witness is a question of reasonableness. It found that the prosecutor had done enough when he spoke to the witness' mother, who reported she had no knowledge of her daughter's whereabouts or any way to reach her, and the State had served five subpoenas in the witness' name to her parents' residence over a four-month period before the trial. The Court acknowledged that there were additional steps the prosecutor might have taken, but in hindsight one may always think of other things.

In contrast, in Barber v. Page, 88 S.Ct. 1318 (1968) the state prosecutor could have brought the federal-prisoner witness to court by seeking a writ of habeas corpus ad testificandum but made "absolutely no effort" to obtain the witness' presence at trial beyond determining that he was serving a federal sentence. The Court held that the prisoner witness was not unavailable for Confrontation Clause purposes.

### C. Exhaustion is Questionable

Before reaching the habeas merits, it is worth noting that it is questionable whether Petitioner properly exhausted his state court remedies with respect to this argument. His appellate brief focused on the alleged lack of cross-examination, with only a one-sentence

mention that the witness was found unavailable. A habeas petitioner must have "fairly presented" to the state courts the "substance" of his federal habeas corpus claim to properly exhaust. Harper v. Lumpkin, 19 F.4th 771 (5th Cir. 2021). "'Arguments raised in a perfunctory manner, such as in a footnote, are waived' because they do not give the state court a fair opportunity to consider the claim." Id., quoting Bridas S.A.P.I.C. v. Gov't of Turkmenistan, 345 F.3d 347, 356 (5th Cir. 2003). Petitioner's single-sentence mention of unavailability may well have fallen short of the fair presentation requirement.

When Petitioner lost at the appellate level, he significantly changed his argument in his writ application to the Louisiana Supreme Court and, for the first time, made a clear argument that the State did not meet its burden of showing that the witness was unavailable. But the Supreme Court has held that the submission of a new claim to a State's highest court on discretionary review does not constitute a fair presentation that exhausts state remedies on that claim. Castille v. Peoples, 109 S.Ct. 1056, 1060 (1989). See also Cossich v. Whitley, 20 F.3d 1170 (5th Cir. 1994) (claim not presented to Louisiana appellate court but included in writ of certiorari to state supreme court not properly exhausted); Lindsey v. Whitley, 996 F.2d 307 (5th Cir. 1993) (unpublished) (same). Thus, it may be that Petitioner has failed to exhaust his state court remedies with respect to the unavailability claim, and such exhaustion is a prerequisite to habeas relief. 28 U.S.C. § 2254(b)(1)(A).

### D. Habeas Deference Under § 2254(d)

The state court's decision of this issue is entitled to great deference. Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d).

A state court's decision is contrary to clearly established Supreme Court precedent when it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts. Williams v. Taylor, 120 S.Ct. 1495, 1519-20 (2000). A state court makes an unreasonable application of clearly established federal law when it identifies the correct governing legal principle from the Supreme Court's decisions but applies it to the facts in a way that is not only incorrect but objectively unreasonable. Renico v. Lett, 130 S.Ct. 1855, 1862 (2010). When a state court has denied a claim on the merits, the AEDPA bars habeas relief unless the prisoner shows that the state court "erred so transparently that no fairminded jurist could agree with that court's decision." Bobby v. Dixon, 132 S.Ct. 26, 27 (2011) (per curiam).

### E. Supreme Court Applies Rule in a Similar Case

The applicable habeas rules were applied to a similar case in Hardy v. Cross, 132 S.Ct. 490 (2011). A witness testified at a first trial, but she disappeared before a second trial. At the second trial, an intern from the prosecutor's office read the witness' prior, cross-examined testimony to the jury. This was done based on the state court finding that the witness was unavailable. The prosecution represented that the witness had been extremely fearful, and prosecutors had remained in "constant contact" with her and her

family.  The mother and brother of the witness eventually told an investigator that they did not know where she was.  The investigator and other officers searched or contacted multiple locations where the witness might be found, but they were unsuccessful.  The federal district court denied habeas relief, but the Seventh Circuit reversed and granted relief.  The Supreme Court, in a per curiam opinion, summarily reversed the granting of relief.

Hardy noted that the Sixth Amendment does not require the prosecution to exhaust every avenue of inquiry, and "more to the point, the deferential standard of review set out in 28 U.S.C § 2254(d) does not permit a federal court to overturn a state court's decision on the question of unavailability merely because the federal court identifies additional steps that might have been taken."  Hardy, 132 S.Ct. at 495.  "Under AEDPA, if the state-court decision was reasonable, it cannot be disturbed."  Id.

**F. Analysis**

In this case, the prosecutor was under the impression, after the continuance was granted, that the witness would be unavailable because she was moving to Korea.  By the time of trial, the State knew that the witness was back in the country, but the record does not disclose precisely when the State gained this information.  Presumably the State had a means of potentially contacting the witness, whether by return fax or the mentioned email address, in an effort to get her physical address and attempt to exercise its out-of-state subpoena power if the witness would not voluntarily appear.[1]  There is no indication that

---

[1] Louisiana has adopted the Uniform Act to Secure the Attendance of Witnesses from Without the State, which would have provided a means for the prosecutor to attempt to subpoena the

the State made such efforts, but that is somewhat understandable in view of the prior proceedings that led to the recording of the witness' testimony for trial purposes. The State may have assumed that the issue was then resolved, only to have the defense again insist on the witness' personal presence on the day of trial.

There are certainly grounds to argue that the State could have done more in an effort to obtain the witness' personal presence, but there are ambiguities regarding when the State learned that the witness was back in the United States and the extent to which the prosecutor had a means of communicating with the witness. If this case were being reviewed on direct appeal, it would be more troublesome, but here we have a state court adjudication by the trial judge and the appellate court that "at the time of trial, she was unavailable to testify." Those decisions considered all of the available facts. When Petitioner squarely presented the unavailability issue to the Supreme Court of Louisiana, the claim was summarily denied.

This court must assess the claim while considering the heavy deference due under Section 2254(d). The statute "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and reaches only "extreme malfunctions" in the state criminal justice system. Harrington v. Richter, 131 S.Ct. 770, 786 (2011). Thus, "even a strong case for relief does not mean the state court's contrary

---

witness if she were in a state that has also adopted the Act. La. Code of Crim. Proc. arts. 741–745. The process is not simple, but it is available. Online sources report that all 50 states and the District of Columbia have adopted some version of the Act.

conclusion was unreasonable." Id.  "If this standard is difficult to meet, that is because it was meant to be." Id.

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington, quoting Yarborough v. Alvarado, 124 S.Ct. 2140 (2004).  This is a case where fairminded jurists could disagree on the correctness of the state court's decision. The prosecutor did not present an airtight case of unavailability, but there was a showing that the witness had been out of the country and had returned at some uncertain time, and the extent of the State's ability to communicate with the witness was not clear.  The state court decision, based on the record before the state court, leaves room for reasonable jurists to disagree on the correctness of the decision given the Supreme Court decisions that clearly establish the relevant law.  Given that, habeas relief is not available on this claim.

**Ineffective Assistance of Counsel**

**A. Introduction**

Petitioner argues that his trial attorney rendered ineffective assistance of counsel in several ways.  To prevail on such a claim, Petitioner must establish both that his counsel's performance fell below an objective standard of reasonableness and that, had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different.  Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984).  The state court denied the Strickland claims on the merits.

### B. Habeas Burden

Petitioner's claim was adjudicated and denied on the merits by the state court, so 28 U.S.C. § 2254(d) directs that the question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether the determination was unreasonable, which is a substantially higher threshold. Schriro v. Landrigan, 127 S.Ct. 1933, 1939 (2007). The Strickland standard is a general standard, so a state court has even more latitude to reasonably determine that a defendant has not satisfied it. The federal court's review is thus "doubly deferential." Knowles v. Mirzayance, 129 S.Ct. 1411, 1420 (2009). For the federal court to grant relief, "[t]he state court decision must be so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Woods v. Etherton, 136 S. Ct. 1149, 1151 (2016) (per curiam) (quotation marks removed).

### C.  No Motion to Quash Indictment

Petitioner argues that trial counsel was ineffective for failing to make a proper argument in support of his motion to quash the indictment based on procedural irregularities. Petitioner concedes that counsel filed a motion to quash, "but he cited the wrong case law." Petitioner contends that had counsel made a proper argument, the motion to quash would have been successful.

This claim fails on the prejudice prong of Strickland. Failure to file a motion to quash the indictment (issued on a finding of probable cause), does not undermine confidence in the outcome of the trial (where a jury found proof of guilt beyond a reasonable doubt). And there is little doubt that, if defense counsel had succeeded in having

the indictment quashed, the State would have sought and obtained a procedurally proper indictment based on the DNA report and other evidence. Thus, a successful challenge to the indictment would have served no purpose other than to delay the proceedings. Accordingly, Petitioner has failed to demonstrate actual prejudice as required for relief under Strickland. Pickney v. Cain, 337 F.3d 542, 545-46 (5th Cir. 2003) (rejecting similar Strickland claim for lack of prejudice).

### D.  No Objection to Jury Instruction

Aggravated rape includes a rape committed on a victim under the age of 13. La. R.S. 14:42(A)(4). The court charged the jury based on that statute and the definition of rape in La. R.S. 14:41 that it includes oral or vaginal sexual intercourse committed without the victim's consent. The statute includes in Section 41(B) a statement that emission is not necessary, and any sexual penetration, when the rape involves vaginal or anal intercourse, however slight, is sufficient to complete the crime.

Petitioner argues that counsel was ineffective because he did not object to the lack of an instruction regarding the "penetration" element. But the prosecution's theory was not that Petitioner committed vaginal or anal intercourse. He was charged with oral sexual intercourse, which Section 41(C) defines as including the touching of the genitals of the victim using the mouth or the tongue of the offender. The jury was properly charged with those elements of the crime. Tr. 783-84. The state appellate court reviewed the conviction for sufficiency of the evidence, and it found it to be sufficient based on the oral sexual intercourse theory of the crime. There was no need to prove penetration.

The trial court denied a post-conviction application based on the alleged ineffective assistance of counsel for failure to object to the lack of a penetration element charge.  The court noted that all essential elements had been proven without the need to establish penetration.  The appellate and supreme courts summarily denied writs.  Petitioner cannot show that the state court's decision was an objectively unreasonable application of Strickland under these circumstances.  There is no basis to find that counsel's performance was deficient on the grounds that he did not request a wholly inapplicable jury instruction.

### E.  Failure to Address Duplicity and Vagueness

Petitioner argued in his post-conviction application that counsel was ineffective because he did not object on the grounds that the elements used to convict Petitioner for aggravated rape could also constitute a crime under oral sexual battery.  The penalty for aggravated rape is natural life, and the punishment for oral sexual battery was 25-99 years when the victim is under the age of 13.  Petitioner argues that counsel should have filed a motion to quash and forced the State to prosecute based on "the least restrictive crime, i.e., oral sexual battery."

The state court denied this claim summarily.  That decision was not an unreasonable application of Strickland.  Criminal acts are often subject to potential prosecution under multiple statutes.  When the alleged actions of a criminal defendant violate more than one statute, the prosecutor has discretion to decide under which statute to charge the defendant.  United States v. Batchelder, 99 S.Ct. 2198, 2204 (1979).  Petitioner contends that two statutes covering the same conduct leads to vagueness and confusion, but it does not.  "So long as overlapping criminal provisions clearly define the conduct prohibited and the

punishment authorized, the notice requirements of the Due Process Clause are satisfied." Batchelder, 99 S.Ct. at 2204.

### F.  No Objection to Report's Reference to CODIS

The court discussed above the introduction of evidence regarding CODIS and the request for a mistrial.  Petitioner argues that counsel was ineffective for failing to object to the crime lab report that contained the reference.  But the record shows that counsel did object and requested a mistrial.  Tr. 655.  Petitioner also faults counsel for not asking for a limiting instruction or admonition or asking the jurors whether they knew what CODIS stood for.  The state courts summarily denied these claims.

"Judicial scrutiny of counsel's performance must be highly deferential," and a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  Strickland, 104 S.Ct. at 2065.  The court must indulge a "strong presumption" that counsel's conduct falls within the wide range of reasonable professional assistance, so the defendant must overcome the presumption that the challenged action or inaction "might be considered sound trial strategy."  Id.

Whether to request a limiting instruction is a matter of trial strategy.  Some attorneys believe that it is better to not request a limiting instruction or admonition because it may call additional attention to evidence that might have otherwise escaped the jury's notice, or it might suggest that defense counsel is trying to hide something.  The trial judge noted, in denying a mistrial, that it was unlikely that any jurors knew what CODIS stood for or

perhaps implied.  To give a limiting instruction or admonition regarding the references to CODIS would likely draw attention to something that would have otherwise been overlooked.  A reasonable attorney could easily decide, within the range of acceptable performance, to forgo such a request and, instead, move for a mistrial outside the presence of the jury.  The state court's denial of this final <u>Strickland</u> claim was entirely reasonable.

**<u>Ramos</u> Challenge**

After briefing was completed, Petitioner asked to present an additional claim that had recently been exhausted in the state courts.  The court granted leave, and Petitioner filed a brief.  Doc. 20.  He argued that the potential for a non-unanimous verdict in his case rendered his conviction unconstitutional.  The judge instructed the jury: "Ten of your number must concur in order to render any verdict in this case."  Tr. 788.  The clerk of court read the verdict, which stated that the jury found the defendant guilty.  The clerk asked the foreman if that was the verdict of the jury, and the foreman answered that it was.  No party requested polling of the jury, and the jury was released.  Tr. 792-93.  Thus, we do not know whether the vote was unanimous.  The State was afforded an opportunity to respond to this new habeas claim, but it did not file anything.

The Supreme Court held in <u>Ramos v. Louisiana</u>, 140 S.Ct. 1390 (2020) that the Sixth Amendment, as applied to the states under the Fourteenth Amendment, requires a unanimous jury verdict to convict a defendant of a serious criminal offense.  But the Court later held that <u>Ramos</u> announced a new rule of criminal procedure that does not apply retroactively on federal collateral review.  <u>Edwards v. Vannoy</u>, 141 S.Ct. 1547, 1562

(2021). Petitioner's conviction was final following the completion of the direct appeal process in 2017. He is not entitled to habeas relief on his supplemental claim.

Accordingly,

It is recommended that Petitioner's petition for writ of habeas corpus relief be denied.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court

to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 28th day of December, 2022.

Mark L. Hornsby
U.S. Magistrate Judge